PLATTE COUNTY, APPELLEE, v. BUTLER COUNTY, APPELLANT.

FILED MARCH 26, 1912. No. 17,077.

1. **Counties:** BRIDGE REPAIRS: LIABILITY. When there is no contract between two counties to build or repair a bridge across a stream between them, one county cannot replace an old decayed wooden bridge, which it is dangerous to use, with a new steel structure

of three times the cost, by replacing several spans at a time until the whole bridge is rebuilt, and recover the expense of so doing from the other county as repairs.

2. ——: ——: ——. If one county resolves upon such a course and proceeds to replace three wooden spans with steel at three times the cost necessary to rebuild them as originally constructed, there being seven or eight times that many spans in the entire bridge, it cannot recover from the other county as for "needed repairs."

APPEAL from the district court for Butler county: GEORGE F. CORCORAN, JUDGE. *Reversed and dismissed.*

*A. V. Thomas* and *L. S. Hastings,* for appellant.

*C. N. McElfresh, W. N. Hensley* and *Louis Lightner,* contra.

SEDGWICK, J.

The plaintiff county recovered a judgment in the district court for Butler county upon an alleged claim for repairs of the bridge over the Platte river between the plaintiff county on the one side and the defendant county and Polk county on the other side, and the defendant has appealed to this court.

There has never been a contract between these two counties for the construction or repairs of this bridge. By sections 87-89, ch. 78, Comp. St. 1911, two counties may enter into a contract to build a bridge over a stream which divides the counties, and where such contract exists, if either county, after reasonable notice, neglects or refuses to build the bridge, the other county may build the same and recover a portion of expenses from the county in default; and where no contract exists between the counties, if either of them refuses to enter into a contract to repair the bridge, the other county may enter into such contract "for all needful repairs" and recover a portion of the costs from the other county. Under this provision the plaintiff county entered into a contract for work to put the bridge into condition for travel, and the defend-

ant county refused to pay any part thereof on the ground that the work done was not needful repairs, within the meaning of the statute. The plaintiff insists upon the application of the rule that, when each party requests the court to instruct in his favor, it amounts to a submission of the cause to the court for determination. This question, however, is not material, as in our view of the case the judgment is not supported by the evidence.

The question presented is whether this work was a part of a plan to build another and different bridge, or whether it was a needful repair of the existing structure. "Repair," as used in this statute, was defined in *Brown County v. Keya Paha County*, 88 Neb. 117: "The word 'repair' as applied to bridges in the road laws means to restore to a sound or good state after decay, injury, dilapidation, or partial destruction." And in *Colfax County v. Butler County*, 83 Neb. 803, it was held that "to build practically a new bridge" is not repairs. The evidence shows that the bridge in question was constructed 22 or 23 years before this work was done, and was entirely of wood and had needed repairs quite often. Mr. Smith, a member of the board of supervisors of the plaintiff county, testified that "the whole bridge was pretty much out of repair, * * * the superstructure of the lower part of the bridge was badly rotted, and there was lots of caps, piling and timber of that kind that was rotten clear through," and that, while such a bridge would not be expected to be serviceable for more than about 20 years (one expert witness testified "in the neighborhood of 12 years"), a steel bridge ought to last from 50 to 75 years. Another witness testified: "The bridge was in pretty bad condition in 1909, and outside of this south turn-out it was rotten and in bad shape, and the board as a committee had the idea, even though the bridge was temporarily repaired, that it could not stand very long on account of being in such kind of condition. We built the steel spans so that part of the bridge would stay, and in one sense we knew from the condition of the other part of the bridge that it would

not stay very long. It was my judgment and the judgment of the board that it couldn't stay very long after the old part of the bridge went away. We have, since the old wood bridge went out, put in steel spans clear across there, connecting with the three steel spans already put in under the guise of repairing the bridge." The length of the bridge was 1,945 feet, and they concluded to put in three new steel spans of 80 feet each, 240 feet in all. The cost of the three steel spans was over $6,000, and these three spans could have been replaced with wood of a similar construction as the original bridge at a cost not exceeding $2,000. · We have seen that the defendant might be held liable for its proportion of the needful repairs of the old bridge, but it could not, under the law, be held liable to contribute to the construction of a new bridge. The defendant alleged, and the evidence shows, that the authorities of Platte county considered and determined that the bridge as a whole had become dangerous and unserviceable and that it was necessary to replace it with a new structure of steel. Instead of removing the old structure and building a new bridge of steel at once, they determined upon a plan of putting in these new spans of steel, to be followed by replacing the other spans of the bridge in a similar way, and so replacing the old bridge with a new bridge of steel. This plan was executed and they now have a new steel bridge. The plaintiff contends that this was a proper and economical thing to do, and says in the brief: "It seems to us that, in the nature of things in this case, circumstances require a substantial and lasting bridge in place of the makeshifts that have been used. The evidence at the trial was that 'the relative life of a wooden bridge is in the neighborhood of 12 years, while a steel bridge similar to these three steel spans ought to last 50 or 75 years.' It further appears from the abstract that the cost of a wooden structure similar to these three steel spans would be about $2,000. It is, therefore, established that, while a steel structure costs three times as much as a similar wooden structure,

it lasts from four to six times as long. Therefore, so far as the question of economy goes, there can be no doubt that the board of supervisors of Platte county acted wisely and well in constructing the steel spans. It should also be borne in mind that necessity has changed since the erection of the old wooden bridge in 1871; for instance, the old horse-power threshing machine has given way to one propelled by a traction engine, weighing, perhaps, six times as much as the old horse-power. The pleasure vehicle of today is, in many cases, an automobile, weighing from one to two or three tons, instead of the carriage of our fathers." This reasoning is plausible, and we have no disposition to question its logic, but it should be addressed to the legislature. The legislature has not seen fit to allow one county to build a new bridge at the expense of another county, however desirable such a structure might be, and however much it might be in the interest of the people of both counties. To replace an old decayed wooden structure with a new, serviceable, economical steel bridge, at an expense of at least three times as much as the original cost of the wooden bridge so replaced, is not "needful repairs," within the meaning of the statute. In this view of the case it is not necessary to determine the question presented as to the sufficiency of the notice to the defendant county, and as to the true dividing line between the two counties, nor as to the proper construction of that part of the proviso of section 88, which limits the liability of the defendant county in any event to "such proportion of the costs of making such repairs *as it ought to pay,* not exceeding one-half of the full amount so expended," nor the effect, if any, that should be given to the fact that the plaintiff county has not paid for these repairs from its own funds, but from taxes levied upon the taxable property of the city of Columbus and Columbus township.

The judgment of the district court is reversed and the cause dismissed.

REVERSED AND DISMISSED.

REESE, C. J., not sitting.